Present:  All the Justices

THOMAS O. WILLIAMS, III,
ET AL.

                                    OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 971616               June 5, 1998

THOMAS O. WILLIAMS, IV, ET AL.

                FROM THE COURT OF APPEALS OF VIRGINIA


     This is a dispute between the parents of a child in an

intact family unit and the child's paternal grandparents over

the grandparents' right of visitation with the child.

     Appellees Thomas O. Williams, IV, and Sarah Hasty Williams,

husband and wife who reside together, are the natural parents of

a daughter born on March 9, 1991.  Appellants Thomas O.

Williams, III, and Frances S. Williams are the child's paternal

grandparents, who reside near the parents in Blacksburg.

     The child's family is intact.  There is no evidence of

parental abuse or neglect.  The parents are respected members of

the community in which they live.  They are mentally,

physically, and morally fit, and are capable of meeting their

daughter's financial, educational, moral, and social needs.

     The parents and grandparents maintained regular contact

until February 1994 when the parents announced to the

grandparents, after consulting with a North Carolina

"counselor," that they were "detaching" or withdrawing from the

relationship which previously existed with the grandparents.

Eventually, the grandparents filed a petition seeking visitation with their granddaughter. The Montgomery County Juvenile and Domestic Relations District Court and, on appeal, the Circuit Court of Montgomery County ordered visitation.

The circuit court decided that the child would "benefit from contact with her grandparents"; that such visitation would not interfere with the child's health or emotional development; that such visitation "is a minimal intrusion into the family unit"; that the grandparents "obviously love" the child and "have the ability to adequately care for her"; and that the child's best interests would be served by having visitation with her grandparents.

On appeal to the Court of Appeals, the parents asserted that Code § 20-124.2(B), as it pertains to nonparent visitation, interferes with their right to autonomy in child rearing and, hence, violates the Fourteenth Amendment to the United States Constitution. The statute permits grandparents, and others, to seek visitation.

As pertinent here, the statute provides: "The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest." Code § 20-124.1 provides that the term "person with a legitimate

2

interest" is to be "broadly construed and includes, but is not limited to grandparents, stepparents, former stepparents, blood relatives and family members."

The Court of Appeals held there is no constitutional problem in the applicable statutes. In so ruling, the appellate court concluded that the right of parents in raising their child is a fundamental right protected by the Fourteenth Amendment. Williams v. Williams, 24 Va. App. 778, 783, 485 S.E.2d 651, 654 (1997). The Court of Appeals further decided that state interference with a fundamental right must be justified by a compelling state interest, and that to constitute a compelling interest, "state interference with a parent's right to raise his or her child must be for the purpose of protecting the child's health or welfare." Id.

The Court of Appeals then interpreted Code § 20-124.2(B) to permit the state to interfere with the right of parents to raise their child by allowing a court to order nonparent visitation upon a showing by clear and convincing evidence that the best interests of the child would be served by such visitation. Id. at 784, 485 S.E.2d at 654. However, the Court of Appeals said that the language in the foregoing statute that a court "shall give due regard to the primacy of the parent-child relationship," evinces the General Assembly's intent to require the court to find that a denial of nonparent visitation would be

3

detrimental to the child's welfare before the court may interfere with the constitutionally protected parental rights. Id.

In other words, the Court of Appeals said, "For the constitutional requirement to be satisfied, before visitation can be ordered over the objection of the child's parents, a court must find an actual harm to the child's health or welfare without such visitation." Id. at 784-85, 485 S.E.2d at 654. A court reaches consideration of the "best interests" standard in determining visitation only after it finds harm if visitation is not ordered. Id. at 785, 485 S.E.2d at 654.

The Court of Appeals held that the circuit court failed to make the required finding of harm if visitation were denied, reversed the circuit court, and remanded the case for reconsideration of visitation in accord with the standard it set forth. Id.

We agree with the Court of Appeals' discussion holding there is no constitutional infirmity in the applicable statutes and with that court's interpretation, as we have summarized it, placed upon the statutes. We do not agree, however, that the case should be remanded to the circuit court; a remand is unnecessary. There is no allegation or proof that denial of grandparent visitation would be detrimental to this child's

4

welfare, and no further consideration of that issue at this stage of the proceeding is warranted.

Consequently, we will modify the Court of Appeals' judgment to eliminate the requirement of a remand and will affirm the judgment as modified.  In so doing, we will deny the grandparents' petition for visitation and will dismiss the proceeding.

<u>Modified, affirmed, and dismissed</u>.

JUSTICE HASSELL, with whom JUSTICE KINSER joins, dissenting in part and concurring in result.

I.

I dissent, in part, because I believe that Code § 20-124.2(B), as applied in this proceeding, violates the Fourteenth Amendment of the United States Constitution.  I note that only three members of this Court agree with the judgment of the Court of Appeals as modified.

II.

Code § 20-124.2(A) states in part:

"In any case in which custody or visitation of minor children is at issue, whether in a circuit or district court, the court shall provide prompt adjudication, upon due consideration of all the facts, of custody and visitation arrangements, including support and maintenance for the children, prior to other considerations arising in the matter. . . .  The procedures for determining custody and visitation arrangements shall insofar as practical, and

5

consistent with the ends of justice, preserve the dignity and resources of family members. . . ."

Code § 20-124.2(B), which is the subject of this appeal, states:

"In determining custody, the court shall give primary consideration to the best interests of the child. The court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest. The court may award joint custody or sole custody."

III.

A.

The grandparents initiated this proceeding by filing a petition, pursuant to Code § 16.1-241(A)(3), in the Montgomery County Juvenile and Domestic Relations District Court. The grandparents requested that the court enter an order permitting them to obtain visitation with their granddaughter. The parents opposed the visitation petition.

The juvenile and domestic relations district court conducted an ore tenus hearing and entered an order requiring that the parents and grandparents participate in counseling "to promote healing within the family and improved communication . . . for the benefit of [the granddaughter], among others" and

6

directed the counselor to report to the court within 45 days. The court also ordered that the "grandparents shall have visitation every other Saturday from 10:00 a.m., until 6:00 p.m. . . . and every other Thursday from 3:00 p.m., until 6:00 p.m." Subsequently, the court conducted another ore tenus hearing and entered a final order which granted the grandparents visitation and required the parents and grandparents to participate in joint family counseling through the court service unit of the juvenile and domestic relations district court.

B.

The parents appealed the juvenile and domestic relations district court's order to the circuit court. The parents filed a motion to dismiss the grandparents' petition asserting, among other things, that Code § 20-124.2(B) violates the parents' constitutional rights, conferred by the Fourteenth Amendment of the United States Constitution, to raise their child as they deem appropriate.

The circuit court conducted an ore tenus hearing and found that the granddaughter's "family is intact. [There is no] evidence of parental abuse or neglect; [the parents] are respectable members of their community; [the parents] are mentally, physically, and morally fit; and [the parents] are capable of meeting [the granddaughter's] financial, educational, moral, and social needs."

7

The circuit court also found that: "[t]he grandparents are mentally, physically, and morally fit; [the grandparents] are responsible, mature, and respected members of their community; . . . [the granddaughter] will benefit from contact with her grandparents, [who live] only one block apart [from her]; . . . grandparent visitation will not interfere with [the granddaughter's] health or emotional development; and . . . [t]he grandparents obviously love [their granddaughter] and have the ability to adequately care for her." The circuit court rejected the parents' constitutional claim, and entered a final judgment awarding the grandparents visitation with their granddaughter for 10 hours per week.

C.

The parents appealed the judgment of the circuit court to the Court of Appeals of Virginia and reasserted their constitutional challenge. The Court of Appeals held that the parents' autonomy in child rearing is a fundamental right protected by the Fourteenth Amendment of the United States Constitution and that state interference with that right must be justified by a compelling state interest. The Court of Appeals concluded that Code § 20-124.2(B) is constitutionally permissible because the statute implicitly requires a finding that a denial of visitation would be harmful or detrimental to the grandchild. The Court of Appeals remanded the proceeding to

8

the circuit court so that it could make such findings.  Williams
v. Williams, 24 Va. App. 778, 784-85, 485 S.E.2d 651, 654
(1997).  The grandparents appeal, and the parents assign cross-
error to the Court of Appeals' judgment.

IV.

This Court directed the litigants to brief the issue
whether the circuit court had subject matter jurisdiction to
award visitation to the grandparents even though custody of the
child is not at issue between the parents.  The grandparents,
relying upon Code § 16.1-241, argue that the circuit court did
have subject matter jurisdiction to adjudicate this proceeding.
The parents respond that a court may consider visitation by non-
parents only in the context of a custody dispute which is
otherwise before the court. I disagree with the parents.

As the grandparents properly observe, they filed their
petition in the juvenile and domestic relations district court,
invoking that court's jurisdiction under Code § 16.1-241.  This
statute states in relevant part:

"[E]ach juvenile and domestic relations district court
shall have . . . jurisdiction . . . over all cases,
matters and proceedings involving:

"A.  The custody, visitation, support, control or
disposition of a child:

. . . .

"3.  Whose custody, visitation or support is a
subject of controversy or requires determination.  In

9

such cases jurisdiction shall be concurrent with and not exclusive of courts having equity jurisdiction, except as provided in § 16.1-244;

. . . .

"The authority of the juvenile court to adjudicate matters involving the custody, visitation, support, control or disposition of a child shall not be limited to the consideration of petitions filed by a mother, father or legal guardian but shall include petitions filed at any time by any party with a legitimate interest therein. A party with a legitimate interest shall be broadly construed and shall include, but not be limited to, grandparents, stepparents, former stepparents, blood relatives and family members. . . ." Code § 16.1-241.

Code § 16.1-296,[1] in effect on the date that the parents perfected their appeal from the juvenile and domestic relations district court to the circuit court, stated in relevant part:

"A. From any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken within ten days from the entry of a final judgment, order or conviction. . . .

. . . .

"I. In all cases on appeal, the circuit court in the disposition of such cases shall have all the powers and authority granted by the chapter to the juvenile and domestic relations district court."

Applying these statutes, I would hold that the juvenile and domestic relations district court and the circuit court had subject matter jurisdiction to adjudicate the issues raised in this proceeding and that the grandparents have a statutory right

10

to file a petition seeking visitation privileges. Code § 16.1-241(A) confers broad jurisdiction upon the juvenile and domestic relations district courts to adjudicate visitation issues. Code § 16.1-241(B) grants the juvenile and domestic relations district courts jurisdiction of petitions which require visitation determinations. Indeed, the General Assembly specifically mandated in Section (B) of this statute that the authority of the juvenile court to adjudicate matters involving visitation shall not be limited to consideration of petitions filed by parents, but that any party with a legitimate interest, including grandparents, may file such petitions. Code § 16.1-296(A) permits a party to appeal any final order or judgment of the juvenile court affecting the rights or interests of "any person coming within" the juvenile court's jurisdiction to the circuit court. And, Code § 16.1-296(I) grants the circuit court the power and authority granted by Chapter 4.1 of Title 16.1 of the Code to the juvenile and domestic relations district courts.

Furthermore, in West v. King, 220 Va. 754, 756-57, 263 S.E.2d 386, 387 (1980), we held that Code § 16.1-241, as it existed in 1977, did not vest a juvenile court, and, hence, a circuit court on appeal, with jurisdiction to order grandparent visitation over the objection of a child's custodial parent.

---

[1] Code § 16.1-296 was subsequently amended, but those amendments do not affect the disposition of this appeal.

11

The General Assembly subsequently amended Code § 16.2-241, specifically granting jurisdiction to the juvenile and domestic relations district court to consider visitation petitions filed by grandparents.

I observe that today, all seven members of this Court agree that the juvenile and domestic relations district court and the circuit court had jurisdiction to adjudicate the grandparents' petition, and five justices agree that the grandparents have a statutory right to file a petition seeking visitation privileges. Only Justices Keenan and Koontz believe that the grandparents have no statutory right to file a visitation petition on the particular facts in this proceeding.

V.

A.

The grandparents argue that Code § 20-124.2(B) does not contravene the Fourteenth Amendment of the United States Constitution. The grandparents contend that, "although the practical disagreement here is between parents and grandparents, the real legal conflict is between the parents and the state. The specific challenge is to balance . . . the state's interest in protecting the granddaughter's constitutional rights under the First Amendment of the United States Constitution to visit her grandparents . . . and . . . the parents' constitutional rights under the Fourteenth Amendment of the United States

Constitution to control [the granddaughter's] life."

Continuing, the grandparents assert that Code §§ 20-124.2 and 16.1-241 require that a court balance the interests of the state and the interests of the parents; that the circuit court has appropriately balanced the rights of all parties and found by clear and convincing evidence that their granddaughter's best interests would be served by requiring her to have limited visitation with her grandparents; and that the challenged statute is constitutional.  Responding, the parents contend that Code § 20-124.2(B), as applied to them, is unconstitutional because the statute infringes upon their Fourteenth Amendment rights to conduct their family affairs free from governmental intrusion.

B.

The Fourteenth Amendment of the United States Constitution provides in relevant part that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  The United States Supreme Court, explaining the protections accorded by the Fourteenth Amendment, has stated:

> "While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated.  Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations

13

of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."  Meyer v. Nebraska, 262 U.S. 390, 399 (1923).

The Supreme Court observed in Moore v. East Cleveland, 431 U.S. 494, 499 (1977), that it "has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment" (quoting Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 639-40 (1974)).  Additionally, the United States Supreme Court has stated its "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment,"  Santosky v. Kramer, 455 U.S. 745, 753 (1982), and that there is "a 'private realm of family life which the state cannot enter.'"  Moore, 431 U.S. at 499 (quoting Prince v. Massachusetts, 321 U.S. 158, 166 (1944)).  Accord Lassiter v. Department of Soc. Servs., 452 U.S. 18, 27 (1981).

The Supreme Court of the United States has made clear that a state may interfere with a parent's right to raise children only when the state acts in its police power to protect the health or safety of the child.  See Wisconsin v. Yoder, 406 U.S. 205, 230 (1972) (Amish children would not be harmed by receiving an Amish education instead of attending public high school);

_Prince_, 321 U.S. at 170 (Supreme Court approved conviction of a guardian who allowed a child to sell religious magazines, finding a legitimate state interest in preventing psychological or physical injury to the child); _Pierce_ v. _Society of Sisters_, 268 U.S. 510, 534 (1925) (parents' decisions to send their children to private schools was not inherently harmful to children).

Here, I am concerned with the parents' fundamental rights to raise their child as they deem appropriate. Therefore, any statute which seeks to limit those rights can only be justified by a compelling state interest, and such statute must be narrowly drawn to express only the legitimate state interest at stake. _Washington_ v. _Glucksberg_, ___ U.S. ___, ___, 117 S.Ct. 2258, 2268 (1997); _Reno_ v. _Flores_, 507 U.S. 292, 301-02 (1993). Thus, this Court must consider whether Code § 20-124.2(B), as applied in this case, requires a finding of a compelling state interest before a court can interfere with the parents' fundamental rights to raise their child by awarding visitation to the grandparents over the parents' objections.

VI.

A.

The language contained in Code § 20-124.2(B) is clear and unambiguous and, therefore, I would look no further than the plain meaning of the language contained in the statute to

15

ascertain its meaning.  <u>Supinger</u>, 255 Va. at 205-206, 495 S.E.2d at 817; <u>City of Winchester</u> v. <u>American Woodmark Corp.</u>, 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995).  This Court has stated:

> "'While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity.  Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'"  <u>Barr</u> v. <u>Town & Country Properties, Inc.</u>, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting <u>Watkins</u> v. <u>Hall</u>, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)); <u>accord</u> <u>Supinger</u>, 255 Va. at 206-07, 495 S.E.2d at 817-18; <u>Haislip</u> v. <u>Southern Heritage Ins. Co.</u>, 254 Va. 265, 268-69, 492 S.E.2d 135, 137 (1997); <u>Abbott</u> v. <u>Willey</u>, 253 Va. 88, 91, 479 S.E.2d 528, 530 (1997); <u>Weinberg</u> v. <u>Given</u>, 252 Va. 221, 225-26, 476 S.E.2d 502, 504 (1996).

B.

In making visitation determinations, a juvenile and domestic relations district court must comply with the statutes contained in Title 20, Chapter 6.1 of the Code, which is entitled, "Custody and Visitation Arrangements for Minor Children."[2]  This chapter contains numerous statutes which relate to custody and visitation.  Code § 20-124.1, which is contained in Chapter 6.1, makes clear that grandparents and certain other

---

[2] If the judgment of the juvenile and domestic relations district court is subsequently appealed to a circuit court, which considers the request for visitation <u>de novo</u>, the circuit court must also apply the statutes contained in this Chapter.

non-parents, are deemed to have a statutory interest in child visitation.[3]

Code § 20-124.2 is entitled "Court-Ordered Custody and Visitation Arrangements."  Code § 20-124.2(B) authorizes a court to award visitation to a non-parent with a legitimate interest. Code § 20-124.2(B) also establishes the standard that a court must apply when making a visitation determination.  The court's determination must be based upon a showing by clear and convincing evidence that the best interests of the child would be served by an award of visitation.

Code § 20-124.3, which establishes the factors that the court shall consider when applying the best interests of the child standard, states in part:

> "**§ 20-124.3.  Best interests of the child**. -- In determining best interests of a child for purposes of determining . . . visitation arrangements . . . the court shall consider the following:
> "1.  The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
> "2.  The age and physical and mental condition of each parent;
> "3.  The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the

---

[3] Code § 20-124.1 states in relevant part:  "'[p]erson with a legitimate interest' shall be broadly construed and includes, but is not limited to grandparents, stepparents, former stepparents, blood relatives and family members provided any such party has intervened in the suit or is otherwise properly before the court.  The term shall be broadly construed to accommodate the best interest of the child."

ability to accurately assess and meet the emotional, intellectual and physical needs of the child;

"4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;

"5. The role which each parent has played and will play in the future, in the upbringing and care of the child;

"6. The propensity of each parent to actively support the child's contact and relationship with the other parent, the relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in matters affecting the child;

"7. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference;

"8. Any history of family abuse as that term is defined in § 16.1-228; and

"9. Such other factors as the court deems necessary and proper to the determination."

None of the factors which a court must consider in Code §§ 20-124.2 and -124.3 when determining visitation requires that a court make a finding of any type of harm to a child's health or safety. The standard, "best interests of the child," does not require the state to exercise its police power to protect the health or safety of a child. Rather, this comparative standard requires a court to make determinations about what may be most beneficial to a child. Undoubtedly, most children would benefit by experiencing a close and loving relationship with caring grandparents. And, such relationship may certainly be in a child's best interests. However, I cannot conclude that the

18

absence of such relationship in this case would affect the granddaughter's health or safety.

As the record demonstrates, Code § 20-124.2 permits a court to intrude upon the parents' fundamental rights to raise their child even though the circuit court made a factual finding that the parents are mentally, physically and morally fit, that they are capable of meeting the child's financial, educational, moral and social needs, and there is no evidence of parental abuse or neglect. The plain language of this statute permits the state to infringe upon the parents' rights to raise their child by authorizing a court to mandate, against the parents' wishes, those persons with whom the child shall associate.

In essence, Code § 20-124.2, as applied in this proceeding, permits the government to impose its views regarding how a child should be raised upon a child's parents, even though such decisions are parental choices protected by the parents' fundamental rights emanating from the Fourteenth Amendment. Code § 20-124.2, as applied here, is constitutionally deficient because it does not require that a court, in awarding visitation to the grandparents, make a determination that such visitation is necessary to protect the safety or health of the child.[4]

---

[4] I am of the opinion that Code § 20-124.2(B) is unconstitutional as applied as opposed to unconstitutional facially because there may be factual circumstances when application of the statute as written would be constitutionally

C.

The Court of Appeals, and the plurality's opinion, concluded that Code § 20-124.2(B) is constitutional because the General Assembly purportedly intended that a circuit court make a finding that "a denial of visitation would be harmful or detrimental to the welfare of the child, before interfering with the constitutionally protected parental rights of the child involved." In reaching this conclusion, the Court of Appeals and the plurality rely upon the following language in Code § 20-124.2(B) which requires that a court "shall give due regard to the primacy of the parent-child relationship" when making visitation determinations. I disagree with the plurality opinion and the Court of Appeals.

The plain language contained in Code § 20-124.2(B) is devoid of any words which require a court to make a finding of harm to a child before granting visitation rights to a grandparent over a parent's objection. The statutory language that a court "shall give due regard to the primacy of the parent-child relationship" simply is not equivalent to the constitutional requirement that a court make a finding of a compelling state interest before interfering with a parent's fundamental right to raise a child. Thus, the plurality opinion

permissible. For example, a court should apply the best interest of the child standard in a visitation dispute between

20

amends Code § 20-124(B) by adding additional language to the statute. I cannot infer a legislative intent that is not evident in the clear and unambiguous language of Code § 20-124.2(B) because to do so would permit the judicial branch of government to usurp the prerogatives of the legislative branch of government by rewriting a statute and, thus, giving that statute a construction that was not manifested by the plain language that the General Assembly chose to use.

VII.

For these reasons, I would hold that Code § 20-124.2(B) is unconstitutional as applied because the statute permits the Commonwealth to interfere with the parents' fundamental rights to raise their child even though the statute does not require the court to make a finding that the failure to award visitation over the parents' objections would be detrimental to the health or safety of the child. Accordingly, I would enter an order in favor of the parents, declaring that Code § 20-124.2(B) is unconstitutional as applied in this proceeding.


JUSTICE KOONTZ, with whom JUSTICE KEENAN joins, dissenting, and concurring in result.

In my view, the dispositive issue in this case is whether the juvenile and domestic relations district court, and

natural parents of a child.

21

thereafter the circuit court on appeal, had the statutory authority to consider a petition by grandparents seeking court-ordered visitation with their grandchild over the united objections of the child's parents. The record reflects that the parents have an intact marriage, are capable of meeting the child's financial, educational, moral, and social needs, and there is no allegation of parental abuse, neglect, or abandonment. In my view, in this specific factual context the pertinent statutory scheme for resolving child visitation disputes does not provide a right to the grandparents to seek visitation, and, accordingly, does not provide authority to the courts to consider their petition. Thus, I would not reach the constitutional issue presented in this appeal.

Initially, I would note that the statutory scheme for resolving visitation suits invoked by this case applies with equal force in the circuit court on appeal and in the juvenile and domestic relations district court from which the appeal arises. See Code § 20-124.2 (expressly applicable to visitation suits whether in the circuit court or the district court); Code § 16.1-296(I)(on appeal, circuit court has all powers and authority granted to juvenile and domestic relations district court). Because the petition in this case was originally filed in the juvenile and domestic relations district court, I begin my analysis with consideration of Code § 16.1-241, which

22

provides the general jurisdiction for that court.  In pertinent

part, this statute provides that:

> [E]ach juvenile and domestic relations district court
> shall have . . . exclusive original jurisdiction . . .
> over all cases, matters and proceedings involving:
>
> A. The custody, visitation, support, control or
> disposition of a child:
>
> 1. Who is alleged to be abused [or] neglected
> . . .;
>
> 2. Who is abandoned by his parent or other
> custodian or who . . . is without parental care and
> guardianship;
>
> 2a. Who is at risk of being abused or neglected
> by a parent or custodian . . .;
>
> 3. Whose custody, visitation or support <u>is a
> subject of controversy or requires determination</u>;
>
> . . . .
>
> The authority of the juvenile court to adjudicate
> matters involving the custody, visitation, support,
> control or disposition of a child shall not be limited
> to the consideration of petitions filed by the mother,
> father or legal guardian but shall include petitions
> filed at any time by any party with a legitimate
> interest therein.  A party with a legitimate interest
> shall be broadly construed and shall include, but not
> be limited to, grandparents, stepparents, former
> stepparents, blood relatives and family members.

(Emphasis added.)

Code § 16.1-278.15 provides the dispositional authority of

the juvenile and domestic relations district court in visitation

suits in which that court has jurisdiction under Code § 16.1-

241.  In pertinent part, Code § 16.1-278.15 provides in

subsection (A) that in cases involving the visitation of a child pursuant to Code § 16.1-241(A)(3), "the court may make any order of disposition to protect the welfare of the child and family as may be made by the circuit court."  Subsection (B) further provides that in "any case involving the custody or visitation of a child, the court may award custody upon petition to any party with a legitimate interest therein, including . . . grandparents."

In express terms, Code § 16.1-241 provides a broad legislative grant of jurisdiction for the juvenile and domestic relations district court to consider visitation matters, and Code § 16.1-278.15 provides the dispositional authority for that court to award visitation to any party with a legitimate interest, including a grandparent.  However, these code sections do not create any right in the grandparents, or in any other "party with a legitimate interest" to visitation.  Such rights did not exist at common law, West v. King, 220 Va. 754, 756, 263 S.E.2d 386, 387 (1980), nor can they be acquired inferentially. Cf. Johnson v. Johnson, 224 Va. 641, 645, 299 S.E.2d 351, 353 (1983).  Rather, being in derogation of the common law, the right of the grandparents, or any other party with a legitimate interest, to visitation of a child over the united objections of two fit parents must be conferred expressly by statute.  Cf. Wackwitz v. Roy, 244 Va. 60, 65, 418 S.E.2d 861, 864 (1992).

To the extent that the grandparents, as parties with a legitimate interest, have a right to visitation, such right is granted by Code § 20-124.2 which expressly addresses "[c]ourt-ordered custody and visitation arrangements." Code § 20-124.2(A) provides in pertinent part that:

> In any case in which custody or visitation of minor children is at issue, whether in a circuit or district court, the court shall provide prompt adjudication, upon due consideration of all the facts, of custody and visitation arrangements, including support and maintenance for the children, prior to other considerations arising in the matter. The court may enter an order pending the suit . . . .

Code § 20-124.2(B) provides in pertinent part that:

> In determining custody, the court shall give primary consideration to the best interests of the child. The court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest.

Code § 20-124.1 provides that the term "'<u>Person with a legitimate interest</u>' shall be broadly construed and includes, but is not limited to grandparents . . . <u>provided any such party has intervened in the suit or is otherwise properly before the court</u>." (Second emphasis added.)

25

The limiting phrase "provided any such party has intervened in the suit or is otherwise properly before the court" in Code § 20-124.1 impacts the scope of both the provisions of Code § 20-124.2(B) and the provisions of Code § 16.1-241.  This phrase expressly limits the circumstances under which Code § 20-124.2(B) grants the grandparents the right to visitation and, thus, the circumstances under which Code § 16.1-241 provides jurisdiction for the court to consider their petition for visitation.  Moreover, because the common law did not recognize the right of a grandparent to visitation with a grandchild, this statutory scheme must be strictly applied and not "enlarged in [its] operation by construction beyond [its] express terms." C. & O. Railway v. Kinzer, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965); see also Bradick v. Grumman Data Systems Corporation, 254 Va. 156, 160, 486 S.W.2d 545, 547 (1997); Hyman v. Glover, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986) (General Assembly's intent to abrogate common law will be "plainly manifested" in the language of a statute).

Here, the grandparents, as persons with a legitimate interest, are not intervenors in an existing custody or visitation suit between the parents, nor do they assert parental unfitness, evidenced by abuse, neglect, or abandonment, so as to qualify as parties otherwise properly before the court under

Code § 16.1-241(A)(1), (2), and (2a).[*]  Thus, only if Code § 20-124.2(B) is construed without giving any effect to the limiting language of Code § 20-124.1, would the court have had statutory authority to award visitation to the grandparents under the specific circumstances of this case, where two fit parents are united in their objections to that visitation.  However, the limiting language of Code § 20-124.1 suggests that the legislature intended to limit the right of grandparents, and other parties with a legitimate interest, to seek visitation only when that issue would otherwise be properly before the court and not when the grandchild is in the custody of two fit, natural parents in an intact marriage who are united in their objections to visitation by the grandparents.

This conclusion is further bolstered by the language in Code § 16.1-241(A)(3) that provides statutory authority to the court over suits involving a child whose visitation "is a subject of controversy or requires determination," suggesting a consistency with the language of Code § 20-124.1.  I am aware of no prior case in which we have recognized the broad and unlimited right of visitation over parental objection asserted

---

[*]It cannot be disputed that under the common law of this Commonwealth grandparents can file a petition for custody of a child upon an allegation of parental unfitness.  See Bottoms v. Bottoms, 249 Va. 410, 413-414, 457 S.E.2d 102, 104 (1995).

by the grandparents in this case, and I would decline to do so now.

Accordingly, I would hold that the juvenile and domestic relations district court had no statutory authority to grant visitation to the grandparents under their petition because Code § 20-124.2(B) does not provide a right of visitation to the grandparents under the circumstances in this case. For these reasons, I would reverse the trial court's judgment and dismiss the grandparents' petition.